## DETERMINED IN THE

# THIRD DEPARTMENT

### AT

# GENERAL TERM,

## May, 1877.

---

## GAYLORD WILLSEY, Respondent, v. HARRIET S. HUTCHINS, Impleaded, etc., Appellant.

*Married woman — promissory note of — what constitutes a benefit to her separate estate.*

The defendants, husband and wife, executed a valid agreement in writing with one Adams, which provided that he should convey to them or to the husband the right to use and vend a certain patented article in Iowa and Missouri, and that the wife should convey to him a farm owned by her, he giving back a mortgage thereon for the difference between the price of the patent right and the value of the farm. Subsequently, the wife desiring to be released from her contract to convey the farm, executed a note and delivered the same to Adams, who thereafter transferred the same to the plaintiff.

In an action on the note against the wife it was insisted that the husband was the sole purchaser of the patent right, and that the wife was merely a surety. *Held*, that as the wife had legally bound herself to convey the land to Adams, her release from such obligation was a benefit to her separate estate sufficient to sustain the note.

Since the statutes of 1860 and 1862 the executory contract or note of a married woman is *prima facie* valid, and the special facts establishing her liability as a married woman need not be alleged in the complaint.

Appeal from a judgment in favor of the plaintiff, entered upon the report of a referee, and from an order of the Tompkins County Court denying a motion for a new trial.

Harriet S. Hutchins and Charles H. Hutchins, husband and wife, entered into negotiations with G. W. Adams for the purchase of an interest in a patent steam-washer.·

An agreement in writing was executed by the several parties, by which it was provided that Adams should convey to Hutchins and his wife or to the former (there being a dispute upon this point) the right to use and vend the patented article in Iowa and Missouri, and that Harriet S. Hutchins should convey to Adams a farm owned by her, and that he should give back a mortgage thereon for the difference between the price of the patent right and the value of the farm. Thereafter, the wife wishing to be released from her contract to convey the farm, executed to Adams the note on which this action was brought. Subsequently the note was indorsed by Adams to the plaintiff.

The present action was commenced against Harriet S. Hutchins and Charles H. Hutchins, in the Justice's Court, from the decision of which an appeal was taken by the defendant Harriet S. Hutchins, to the County Court of Tompkins county, where the judgment below was affirmed.

*Jerome Rowe*, for the appellant.

*Ferris & Dowe*, for the respondent.

BOARDMAN, J. :

The sole question presented for our decision arises upon the motion for a nonsuit at the close of the evidence. The other exceptions taken upon the trial are not urged, and no valid exception is taken to the decision of the referee. The note in suit was given by the defendants, who are and were husband and wife, to one Adams, and by him transferred to plaintiff before it became due. Adams had negotiated with the defendants for the sale to them, or one of them, of a patent right. The wife, Harriet S. Hutchins, appears to have been the owner of a farm in her own right. The result of the negotiations was that Adams contracted to sell the defendants some patent territory in Iowa and Missouri, to take the wife's farm and give her back a mortgage for the difference. Mrs. Hutchins appears to have made and subscribed such a contract with Adams, in which her husband and Adams joined. The terms and condi-

tions of this contract are proved by parol, the original contract not being produced. No objection to such mode of proof is made. But the fact is agreed upon by all that prior to the giving of the note in suit Mrs. Hutchins was bound by a valid written contract to sell and convey her separate real estate to Adams for the considerations, and on the terms and conditions therein mentioned and contained. It also sufficiently appears that Mrs. Hutchins became dissatisfied with the contract she had made with Adams, and wished to take up and cancel such contract. After some discussion it was agreed between the defendants and Adams that they would give Adams the note in suit, if he would surrender the contract for the farm. This was then done and the note afterwards transferred to plaintiff. The action was first brought in a Justice's Court, where judgment was rendered against both defendants. An appeal was taken to the County Court where, it may be inferred, an order of reference was granted. The foregoing facts were made to appear in a confused way before the referee. The defendant Mrs. Hutchins, I suspect, alone defended. At least the grounds upon which the motion for a nonsuit was founded applied not to Mr. Hutchins and could not avail for him. He had no defense to the action, so far as I can see, and the plaintiff was therefore entitled to judgment against him. But we will assume that Mrs. Hutchins was alone defending, and that the nonsuit was applied for by her only. It was asked for because, in substance, first, the debt was her husband's and she was his surety and had not, in terms, charged her separate estate with its payment; second, her signature was obtained by duress.

There is no evidence which would justify a nonsuit upon the ground of duress. So that at last the appeal turns upon the consideration for which the note was given. If the transaction constituted a dealing by Mrs. Hutchins in relation to or for the benefit of her separate estate, it may be enforced at law though she has not charged her separate estate with its payment. If it was not such a transaction, but she was a mere surety for her husband, the note, as to her, is a nullity. (*Second Nat. Bk.* v. *Miller*, 63 N. Y., 639; S. C., 2 T. & C., 104.)

The note was given to procure the discharge of the contract whereby the defendant Mrs. Hutchins had legally bound herself to

convey her lands to Adams, in exchange for patent right territory to be deeded to her or to her husband, or to both. I do not think it important who got the patent territory so long as the contract for the sale of the land by Mrs. Hutchins was binding upon her and capable of being enforced. Mrs. Hutchins was so bound. She desired to be relieved of that obligation. To accomplish that purpose she gave this note. The giving of the note had relation to, and was for the benefit of, her separate estate; it discharged such separate estate from the incumbrance and herself from the personal obligation created by such contract of sale. It is analogous to the giving of an ordinary note by a married woman in satisfaction of a mortgage upon her separate real estate. Such note must be valid against her. The consideration moves directly to the married woman and for the benefit of her separate estate. So I think the evidence sustains the finding of the referee in the following language: "That she (Mrs. Hutchins) was the owner of separate estate which she held in her own right; that the said note was so executed by her for a consideration moving directly from said Adams to the benefit of her separate estate." (*Prevot* v. *Lawrence*, 51 N. Y., 221; *Frecking* v. *Rolland*, 53 id., 422.)

Another objection was taken, that the complaint should have alleged the coverture of Mrs. Hutchins, the possession by her of a separate estate and that the note in suit was given for the benefit thereof, etc. But the case of *Smith* v. *Dunning* (61 N. Y., 249) settles that point adversely to the appellant's claim.

Prior to 1860 the right of a married woman to bind herself by her promissory note or other executory contract was denied, unless for the direct benefit of her separate estate, or the intent to charge such separate estate was stated in the contract. Since the statutes of 1860 and 1862 the executory contract or note of a married woman is *prima facie* valid, and the special facts establishing her liability as a married woman need not be alleged in complaint.

This is a case where I should have been glad to have come to a different conclusion. The venders of patent rights are entitled to little sympathy when they entice ignorant and humble people into the purchase of distant territories wherein the patent may be made and sold. Such purchasers are usually utterly incompetent to realize from the thing bought if it has any value, and sink into utter

helplessness when the patent vender and his gilded castles have withdrawn. These defendants seem to me such foolish and improvident purchasers, duped into the favorable consideration of an article probably valueless to them, and when committed beyond recall they are compelled to buy their release on the best terms possible.

But as I look upon the law and the facts, I am driven to the opinion that the judgment is correct.

The judgment and order are therefore affirmed, with costs.

Present — LEARNED, P. J., BOOKES and BOARDMAN, JJ.

Judgment and order affirmed, with costs.